IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERDELIN V. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02 C 5221 |
| | ) | No. 04 C 6158 |
| ALEXANDRA JUNG and GENERAL | ) | (Consolidated) |
| BOARD OF PENSION & HEALTH | ) | |
| BENEFITS OF THE UNITED | ) | Judge Wayne R. Anderson |
| METHODIST CHURCH, | ) | |
| | ) | Magistrate Judge |
| and | ) | Jeffrey Cole |
| | ) | |
| JIMMY JACKSON, DEBBIE REID, GERTRUDE | ) | |
| LIVERNOIS, and HELEN EXARHAKOS as | ) | |
| Managing Directors, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER RE DEFENDANT'S
### MOTION FOR PROTECTIVE ORDER

#### INTRODUCTION

Ms. Johnson's complaint alleges that her former employer, the General Board of Pension and Health Benefits of the United Methodist Church (the "General Board"), failed to promote her because of her race and national origin, and thereafter terminated her employment in retaliation for her complaints about that discrimination. As long ago as December 10, 2003, the General Board was aware of plaintiff's interest in deposing Barbara Boigegrain, the General Board's "general secretary and CEO." Ms. Boigegrain was named in Ms. Johnson's initial disclosures as an individual with information about plaintiff's performance and conduct, her applications for various positions, and

defendants' conduct.

On February 6, 2007, plaintiff, acting *pro se*, sent an email to the General Board which appears to confirm an earlier discussion between the parties regarding plaintiff deposing four individuals, including Ms. Boigegrain. The plaintiff proposed March 5, 2007 as a date for Ms. Boigegrain's deposition, and asked the General Board to respond quickly, given the April discovery deadline. (*Motion for Protective Order*, Ex. 1; *Plaintiff's Response and Opposition*, Ex. 2). The General Board did not respond for a month. Not until the plaintiff sent it another email was there a response. (*Motion for Protective Order*, Ex. 3, ¶¶2-3; *Plaintiff's Response and Opposition*, Ex. 3). In that email, the Board's counsel expressed the view that they did "not believe that Ms. Boigegrain ha[d] any knowledge relevant to [plaintiff's] claims, or that is likely to lead to any information that is relevant to [plaintiff's] claims." (*Motion for Protective Order*, Ex. 2). The General Board indicated that it was inclined to move for a protective order barring the deposition of Ms. Boigegrain, but wanted "to give [plaintiff] an opportunity to explain why [she] believe[d] that Ms. Boigegrain ha[d] information relevant to [plaintiff's] claims. (*Id.*). It asked plaintiff to do so as soon as possible.

Plaintiff replied promptly by email on March 8, 2007. She explained that she felt Ms. Boigegrain was a key witness with relevant information to plaintiff's performance at the General Board. Plaintiff referred the General Board to emails in its possession from the human resources department to Ms. Boigegrain regarding plaintiff's job interviews. If the General Board found that inadequate, plaintiff suggested it go ahead and file its motion for a protective order.

That is exactly what happened. The General Board has moved for a Protective Order barring Ms. Johnson from deposing Ms. Boigegrain on the ground that she had no personal involvement with

2

regard to the incidents of alleged discrimination, harassment, or retaliation at issue in plaintiff's lawsuit and that as the General Board's general secretary and chief executive officer, Ms. Boigegrain is too busy to be deposed, given her extensive travel commitments for the Board.

## THE DEFENDANT HAS FAILED TO DEMONSTRATE ITS ENTITLEMENT TO A PROTECTIVE ORDER

Contrary to the common law's sporting theory of justice, 6 Wigmore, Discovery §1845 at 490 (3rd Ed. 1940), the Federal Rules of Civil Procedure provide for liberal discovery. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." As expansive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir.1980); *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir.1987), the standard under the discovery provisions of the Federal Rules of Civil Procedure is even broader. *Hofer v. Mack Trucks*, 981 F.2d 377 (8th Cir.1992). Nonetheless, under Rule 26, the court may enter an order "for good cause shown ... to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Where the movant has sustained its burden of showing good cause, the order may provide "that the disclosure or discovery not be had . . . ." Rule 26(c)(1).

The burden to show good cause is on the party seeking the protective order. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994); *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D.Ill. 2006). Conclusory statements of hardship are not sufficient to carry this burden. *See Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181 at *8 (N.D.Ill. 1998); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, at

3

265 (1970); *Autotech Technologies*, 235 F.R.D. at 440. *See also* note 1, *infra*. Although the question of burdens is emphasized by Ms. Johnson (who is *pro se*), it is ignored by the defendant (which is not).

To support its motion for a protective order, the General Board relies entirely on Ms. Boigegrain's affidavit, in which she avers that she "had no personal involvement" with the alleged acts of discrimination that form the basis of plaintiff's lawsuit, and that it would be burdensome for her to sit for a deposition because her position requires her to travel about thirty per cent of the time. (*Motion for Protective Order*, Ex. 5). As Judge Easterbrook said in another context, "[s]o What?...Who cares?...True, but irrelevant." *Israel Travel Advis. Serv. v. Israel Iden. Tours*, 61 F.3d 1250, 1259 (7th Cir. 1995).

Even if a putative deponent's affidavit denying personal involvement or knowledge sufficed, without more, to preclude discovery – which it seldom does, *Van Den Eng v. Coleman, Inc.*, 2005 WL 3776352 at *3 (D.Kan. 2005); *Horsewood v. Kids "R" Us*, 1998 WL 326589 (D.Kan. 1998); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567 (S.D.Cal. 2007); 8 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d §2037 at 500 (1994) – Ms. Boigegrain's affidavit is nonetheless insufficient, for it does not say that she has *no information* regarding plaintiff's claims. Although the supporting memoranda contend that Ms. Boigegrain has no "direct knowledge or information" relevant to plaintiff's claims, that is not what the affidavit says, and unsupported allegations whether in oral argument, *In re: Payne*, 431 F.3d 1055, 1066 (7th Cir. 2005), or in briefs, do not count. *See United States ex rel. Feingold v. AdminiStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir. 2006). *Cf. Allen v. CTA*, 317 F.3d 676, 702 (7th Cir. 2003)(Posner, J).

The test under Rule 26 is not whether a putative deponent had personal involvement in an event, or even whether she has "direct" knowledge – which is merely another way of saying that she was a participant in the event – but whether the witness may have information from whatever source that is relevant to the claim or defense. Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to discovery of admissible evidence. *See* Rule 26(b)(1). In short, even if one could accept at face value Ms. Boigegrain's claim of lack of personal involvement, her affidavit is analytically irrelevant.

The cases that the General Board relies upon are not to the contrary. Each involves discretionary decisions which are necessarily fact intensive and thus not outcome-determinative here. "'[D]iscretion denotes the absence of a hard and fast rule.'" *Langnes v. Green*, 282 U.S. 531, 541 (1931). *See also Pruitt v. Mote*, 472 F.3d 484 (7th Cir.2006); *Rogers v. Loether*, 467 F.2d 1110, 1111-1112 (7th Cir.1972) (Stevens, J.), *aff'd sub nom, Curtis v. Loether*, 415 U.S. 189 (1974). Being a range, not a point, discretion allows two decision-makers-on virtually identical facts to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir .1995) *with United States v. Williams*, 81 F.3d 1434 (7th Cir.1996).[1] Or, as Judge Posner has put it, "[t]he striking of a balance of uncertainties can rarely be deemed unreasonable...." *United States v. Bullion*, 466 F.3d 574, 577 (7th Cir.2006).

This is not to say that discretionary choices are left to a court's inclination or whim. Those

---

[1] Both cases involved motions for a new trial based on the government's suppression of the same evidence against different defendants, who were members of the El Rukn street gang. In Boyd, the district court found that the suppression mandated a new trial. In *Williams*, the court on the same record came to the opposite conclusion. Chief Judge Posner authored both opinions for a unanimous panel, which affirmed the seemingly irreconcilable decisions as within that spectrum of decision-making inherent in the very concept of discretion, saying, "Chief Judge Aspen and Judge Mills might reach opposite results on the same record yet both be operating within the outer limits of their lawful discretion." *Williams*, 81 F.3d at 1440.

choices must be guided by sound legal principles. Discretion without a criterion for its exercise is, as Justice Frankfurter observed, authorization of arbitrariness. *Brown v. Allen*, 344 U.S. 443, 496 (1953) (Frankfurter, J., concurring and dissenting in part). *See also Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975); *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir.2007) (Posner, J.) (An exercise of discretion requires a consideration of the factors relevant to that exercise). *See also* Henry Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747 (1982). It is only when no reasonable person could agree with the district court's conclusion that it can be said that a discretionary choice is abusive. *See Rivera v. City of Chicago*, 469 F.3d 631 (7th Cir.2006); *Purtell v. Mason*, 2006 WL 2037254 at *3 (N.D.Ill.2006) (St.Eve, J.).

Thus, the fact that some courts, in exercising their discretion, have entered protective orders which appear to have accepted representations in affidavits, does not require that the defendant's motion be granted, regardless of the facts of this case. Moreover, not one of the cases cited by the General Board requires "personal involvement" as a prerequisite to the deposition of a corporate officer. Phrased differently, not one of the cases has prohibited a deposition merely because the witness denies "personal participation" in the matters involved in the litigation. And not one of the cases announces a rule that immunizes senior officers of even major corporations from discovery by virtue of that status or their travel schedules. *See* 8 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2d §2037 at 500-502.

Where a court is satisfied based on all the available information that there is no likelihood that a witness has knowledge of relevant facts, the issuance of a protective order prohibiting a deposition has been sustained as an appropriate exercise of discretion. *See e.g., Thomas v. IBM*, 48

6

F.3d 478, 483-84 (10th Cir. 1995) (upholding lower court's issuance of protective order precluding deposition of chairman of the board of IBM, who testified via affidavit that he lacked personal *knowledge* of any facts supporting plaintiff's age discrimination claims); *Lewelling v. Farmers Ins.*, 879 F.2d 212, 218 (6th Cir. 1989) (upholding district court's exercise of discretion in granting protective order barring plaintiff from deposing CEO, who lacked *knowledge* of pertinent facts in case brought by employees alleging breach of contract and fraud).

However, those cases do not pretend to articulate an inflexible rule that would mandate the issuance of a protective order solely on the strength of a prospective deponent's denial of knowledge. Indeed, most cases have refused to accept this kind of *ex parte* tactic, recognizing that a party has a right to test the validity of the assertions. *See* discussion at 4, *supra*; *Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001); *Ierardi v. Lorillard, Inc.*, 1991 WL 66799, *1 (E.D.Pa. Apr. 15, 1991)(courts have rejected claims of ignorance by high corporate officials as grounds for issuing protective orders against their depositions). Ms. Boigegrain has not even advanced such a claim. She merely denies personal involvement and that is manifestly inadequate under all the cases.

*Mader v. Motorola Inc.*, No. 92 C 8089, 1994 WL 535125, at *3 (N.D.Ill. Sept. 30, 1994) on which the defendant appears to place excessive reliance, (*Memorandum in Support*, at 3; *Reply in Support*, at 3), saps the defendant's argument of any vitality. There, then Magistrate Judge Gottschall issued an order prohibiting the deposition of Gary Tooker, Motorola's new CEO, not because he was not personally involved in the events of the case – having only come on board until about a year *after* the plaintiff's termination – but because there was absolutely nothing in any document, witness statement, or deposition from which it could even arguably be concluded that he

7

"has *knowledge* of the events surrounding [plaintiff's] termination." 1994 WL 535125, *3 (Emphasis supplied). Judge Gottschall pointed out that in contrast, plaintiff could at least "point to a hearsay statement suggesting that Fisher [Tooker's predecessor] had some knowledge of or involvement in the decision to terminate" the plaintiff. *Id.*[2] In the instant case, Ms. Boigegrain was and continues to be the responsible corporate officer during the time of the critical events, and, the evidence that Ms. Boigegrain was no stranger to the goings-on in the plaintiff's department and knew more about her situation and the incidents that form the backdrop of the suit than the Motion for Protective Order is willing to admit exists – to use Justice Cardozo's phrase – "in prodigal profusion." *Brody v. Pecoraro*, 250 N.Y. 56, 164 N.E. 741, 742 (N.Y. 1928)(Cardozo, C.J.). True, the evidence is circumstantial, "but what circumstances!" *Branion v. Gramly*, 855 F.2d 1256 (7th Cir. 1988). *Cf. Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960)(circumstantial evidence may be more certain, satisfying and persuasive than direct evidence).

There is, for example, a September 26, 2002 memo to file from Alexandra Jung, a managing director, detailing a meeting she had with plaintiff at which she told her she had no authority to promise her a promotion because such decisions required approval from Ms. Boigegrain. (*Plaintiff's Response and Opposition*, Ex. 11). Ms. Boigegrain was also kept apprised, by memorandum, of plaintiff's internal complaints of discrimination and her attitude about promotion interviews. (*Plaintiff's Response and Opposition*, Ex. 11). Such evidence suggests not only knowledge of the

---

[2] Nothing in Judge Gottschall's opinion requires that a witness have "direct knowledge," and any argument whose major premise is that such knowledge is necessary is incompatible with Rule 26's expansive definition of relevancy as the touchstone for permissible discovery. Suppose, for example, the president of a corporation had admitted to an associate, months after the event, that he had fired an employee for statutorily prohibited reasons. Under the defendants' theory, that confidant could not be deposed because he did not participate in the events and had no "direct" knowledge. Such an argument would be manifestly incorrect.

incidents forming the basis of plaintiff's claim, but personal involvement in the decision-making process as well.

This alone would be sufficient to require denial of the defendant's motion. But there is more. Ms. Boigegrain has also submitted other documentation tending to show it is likely Ms. Boigegrain has knowledge about the day-to-day operations in the department and the subject matter of plaintiff's complaint. For example, a November 5, 2002 email from Helen Exarhakos, an assistant department manager, informs plaintiff and other members of the department that "Barbara Boigegrain has been very interested in our Unit this past month." It goes on to relay Ms. Boigegrain performance expectations for the department. (*Plaintiff's Response and Opposition*, Ex. 3). A January 13, 2000 email to the department lets everyone know that Ms. Boigegrain would be holding weekly, informal meetings in her office regarding work topics. (*Plaintiff's Response and Opposition*, Ex. 8). Ms. Boigegrain also appears to have been "Cc'ed" on various departmental emails addressing fairly mundane topics, including project assignments, computer systems upgrades, overtime, preparation for annual performance reviews. (*Plaintiff's Response and Opposition*, Ex. 4-7, 9). Her signature appears on job performance recognition certificates. (*Plaintiff's Response and Opposition*, Ex. 10). And she dictated memoranda regarding staff departures and personnel changes. (*Plaintiff's Response and Opposition*, Ex. 12). At least one pensioner sent Ms. Boigegrain a letter commending the plaintiff's work. (*Plaintiff's Response and Opposition*, Ex. 13). Under these circumstances, it simply cannot be said that Ms. Boigegrain has no "relevant" information as that term is expansively defined in Rule 26.

That leaves the "I'm too busy because I travel a lot" argument, which is a slightly more palatable way of expressing the "I'm too important" argument. If the President of the United States

9

is not immune from responding to reasonably scheduled discovery, *Clinton v. Jones*, 520 U.S. 681 (1997), neither is the General Secretary and CEO of the General Board of Pension and Health Benefits of the United Methodist Church. *See also* 8 Wright & Miller, §2037 at 500-502; *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984). The defendant's travel argument is not only unsustainable as an analytical matter, it is unsustainable as a factual matter. Ms. Boigegrain claims to travels thirty per cent of the time. But that leaves seventy percent of her time that she is available for deposition. As with the President of the United States – who also travels frequently and on business that is no less important than Ms. Boigegrain's – scheduling, not prohibition, accommodates and harmonizes the inevitably competing interests involved in discovery matters.[3]

In short, highly placed executives are not immune from discovery, and the fact that an executive has a busy schedule cannot shield that witness from being deposed. *General Star Indemnity Co. v. Platinum Indemnity Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002); *Six West Retail Acquisition*, 203 F.R.D. at 102.

## CONCLUSION

The record is more than adequate to demonstrate a likelihood that Ms. Boigegrain has knowledge about the issues in this case. How extensive that knowledge is remains to be seen. But that is the purpose of discovery. Her claim that she is busy doing the work of the Board is insufficient to preclude discovery. Indeed, were that claim successful, a vast amount of the discovery routinely accomplished in the courts of this nation would become impermissible. Rule 26 invests a court with broad discretion to regulate and supervise discovery. *Crawford-El v. Britton*, 523 U.S.

---

[3] The claim originally made in open court was that Ms. Boigegrain traveled "three-fourths of the year around the world globally." (*Plaintiff's Response and Opposition*, Ex. 15). Even if this estimate were true, Ms. Boigegrain would not be unavailable for a deposition.

10

574 (1998). Under the circumstances of this case, it would be a singular abuse of that discretion to prohibit Ms. Johnson from deposing Ms. Boigegrain. Accordingly, the defendants' motion for a protective order [# 153] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/10/07