# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MERDELIN V. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 02 C 5221 |
| v. | )     04 C 6158 (consolidated) |
| | ) |
| ALEXANDRA JUNG AND GENERAL | ) Wayne R. Andersen |
| BOARD OF PENSION AND HEALTH | ) District Judge |
| BENEFITS OF THE UNITED | ) |
| METHODIST CHURCH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Merdelin Johnson ("Johnson"), a black woman of Jamaican origin, brought this lawsuit pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and section 1981 of the Civil Rights Act of 1866 ("section 1981") alleging that her former employer, The General Board of Pension and Health Benefits of the United Methodist Church ("The General Board"), failed to promote her because of her race and national origin, retaliated against her based upon complaints of such discrimination, unfairly discharged her, and subjected her to sexual harassment. Further, Johnson alleges that defendant Alexandra Jung ("Jung") individually discriminated against her in her promotion decisions based upon race and national origin in violation of section 1981. Before this court are the defendants' motions for summary judgment on these claims pursuant to Rule 56 of the Federal Rules of Civil Procedure, for which they have filed a joint memorandum in support. For the following reasons, the motions are granted with respect to the allegations of discrimination and unfair termination contained in Counts I and III, the retaliation allegations set forth in Count II that are based on the August and December 2002

promotion decisions, and the sexual harassment claim contained in case number 04 C 6158, which has been consolidated with case number 02 C 5221. Therefore, Johnson has no remaining claims against Jung, and Jung is dismissed as a defendant in this lawsuit. The General Board's motion is denied with respect to those retaliation allegations set forth in Count II that are based upon the March 2001 and January 2003 promotion decisions. Separately, we deny defendants' motion to strike a large portion of Johnson's statements of fact and plaintiff's motions to strike a number of the defendant's submissions.

## BACKGROUND

Johnson joined The General Board as a permanent employee in the summer of 1999. Following an interview with defendant Alexandra Jung, Johnson accepted an offer to become a Team Member on the Benefits Determination Team. Johnson, however, quickly became dissatisfied with her workplace environment. Johnson alleges that she filed her first complaint of discrimination with Human Resources in the same summer that she joined the organization. (Pl.'s Resp. at 1.1.) (because Johnson's response to the motion for summary judgment confusingly features two sections of a single document, each beginning with the page number 1, we will label facts appearing in section one of her brief beginning with 1.1 and facts appearing in section two beginning with 2.1).

Johnson alleges that over the next four years, she unsuccessfully bid for a promotion on four occasions: March 2001, August 2002, December 2002, and January 2003. In March 2001, she applied for the position of Team Leader and was interviewed by defendant Jung, Assistant Manager Jamie Blits, and Team Leader Michael Foreman (black, Jamaican). (Defs.' Stmt. Facts ¶¶ 41-43.) The panel unanimously decided on another candidate, John McFall. (*Id.*) Johnson

alleges that hiring official Blits subsequently informed her that her tendency to complain of discrimination might have played a role in the decision to deny her the promotion. (Compl. ¶ 13.) Johnson also claims that Mary Rutherford, a senior official in Human Resources, cautioned that opening an investigation into discrimination might limit her ability to win future promotion. (Compl. ¶ 14.)

On the heels of these events, plaintiff filed an official Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2001. Johnson alleges that, subsequent to filing that charge, her performance reviews begin to slip relative to previous years. She asserts that the "average" overall rating and negative comments she received on John McFall's 2002 mid-year review of her performance did not match the positive feedback she had received during the review period. (Compl. ¶ 17.)

In August and December 2002, Johnson again attempted to advance her career by attaining the position of Plan Sponsor Manager. While The General Board insists that she failed to submit an application while either position was still available, Johnson asserts that she was a candidate and was unfairly passed over in each circumstance.

In January 2003, Johnson attempted to gain promotion for the final time. Again, her bid for a Team Leader position was unsuccessful for reasons she believes were illegitimate. Johnson asserts that within hours of receiving her application, a company official informed her that she had been written up for a prior insubordinate remark. (Compl. ¶ 23.) Johnson believes that this "write up" represented an attempt to provide false grounds for again choosing another candidate for promotion. Since this time, Johnson has filed two additional complaints with the EEOC alleging discrimination and retaliation based upon The General Board's failure to promote her.

Finally, Johnson also sets forth a claim of sexual harassment based upon an incident that occurred in January 2004. Johnson claims that, after being called inside the office of her Team Leader, Jimmy Jackson, she was shown a purportedly humorous video on Jackson's computer. Johnson informed Jackson that she found the video—which featured a momentary display of male nudity—offensive. In response to this incident, Johnson filed a complaint with the EEOC alleging sexual harassment.

Johnson's employment with The General Board came to an end in March 2004 when it was discovered that she had recorded conversations with fellow employees without their consent. The General Board handed down its decision after determining that these audio recordings were both illegal and a threat to the core values of their workplace environment. (Defs.' Memo. at 10.)

Based on the series of facts alleged above, Johnson filed separate lawsuits in the Northern District of Illinois on September 16, 2004 and September 22, 2004, respectively. The first lawsuit (02 C 5221) sets forth three counts of discrimination: (1) Count I alleges discrimination based upon race and national origin in violation of Title VII, (2) Count II alleges retaliation in violation of Title VII, and (3) Count III alleges discrimination and retaliation by The General Board and discrimination by defendant Jung individually in violation of section 1981. The second lawsuit (04 C 6158) sets forth a single count alleging sexual harassment by The General Board. At the plaintiff's request, the two lawsuits were consolidated on November 1, 2005. The defendants now move for summary judgment on all counts.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 277, 248 (1986). The nonmoving party is tasked with presenting specific, competent evidence to rebut the motion for summary judgment. *Butts v. Aurora Health Care, Inc.* 387 F.3d 921, 924 (7th Cir. 2004). We will evaluate the evidence in a light most favorable to the nonmoving party and will draw all reasonable inferences in their favor. *See Anderson*, 477 U.S. at 255.

## DISCUSSION

I. **Discrimination and Promotion**

Counts I and III allege that Johnson was denied promotions in March 2001, August 2002, December 2002, and January 2003 based on her race and national origin. Title VII requires that a plaintiff alleging employment discrimination either provide direct proof of her employer's discriminatory intent or prove disparate treatment through an indirect, burden-shifting method. *Contreras v. Suncast Corp.,* 237 F.3d 756, 759 (7th Cir. 2001). Because Johnson is unable to satisfy either available method for proving the existence of this discrimination, the defendants' motion for summary judgment is granted with respect to these counts.

Johnson makes little attempt to set forth direct proof of discrimination. The only possible direct evidence, which is only identified by Johnson in the context of her retaliation claims, is an alleged 2002 comment in which defendant Jung told Johnson that her accent needed to be more polished. (Pl.'s Resp. at 2.15.) While comments regarding an employee's accent may generally

5

provide direct proof of discrimination, *see Hasham v. California State Board of Equalization*, 200 F.3d 1035, 1050 (7th Cir. 2000), evidence of a stray remark does not. *See Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999). Judge Kendall recently concluded that an employer's negative comments regarding their employee's accent were insufficient to directly evidence discrimination. *Akinbode v. Motorola, Inc.* 2007 U.S. Dist. LEXIS 58909, at *21-26 (N.D. Ill. August 13, 2007). In that case, the court invoked the common actor inference, determining that because the official who remarked on their employee's accent was the same official who had hired them in the first place, it was unlikely that their remarks reflected a discriminatory animus. *See id.; Chiaramonte v. Fashion Bed Group, Inc.* 129 F.3d 391, 399 (7th Cir. 1997). In our case, Jung was similarly aware of Johnson's personal characteristics when she brought her into the organization and Johnson does not allege that Jung ever mentioned her accent outside of this single alleged comment. Finally, Jung was not a decision-maker for any relevant promotional opportunity that Johnson applied to after this comment was made. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1057-58 (7th Cir. 2006) (comments must be made by someone who exercised decision-making authority). Thus, even assuming that Jung did remark on Johnson's accent, we are unconvinced that this affected Johnson's ability to secure a future promotion. *See Geier v. Medtronic, Inc.* 99 F.3d 238, 242 (7th Cir. 1996) (there must be a causal relation between the comment and the adverse employment action).

Given her inability to provide direct evidence of discrimination, Johnson must proceed under the more commonly used indirect method of proof. *Sublett* v. *John Wiley & Sons, Inc.*, 463 F.3d 731, 736-37 (7th Cir. 2006). This burden-shifting approach, set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), requires that she first establish a *prima facie*

6

case of discrimination. *McDonnell Douglas,* 411 U.S. at 801. In the context of a failure to promote, this requires her to show that: (1) she is a member of a protected class; (2) she applied for a job she was qualified for; (3) she was denied the promotion; and (4) a similarly situated employee outside of her protected class received the position. *Contreras*, 237 F.3d at 759.

> *A.     The August and December 2002 Positions*

Johnson cannot establish a prima facie case for the August and December 2002 promotion opportunities because she failed to apply for either position while a vacancy still existed. (Def.'s Memo. at 8.) As a result, she cannot meet the second requirement for establishing a prima facie case, that she applied for a job for which she was qualified, with respect to either occasion. With respect to the August 2002 position, The General Board provided notice of the opening at the beginning of the month. (Defs.' Stmt. Facts ¶ 60.) Of the nine timely applications they received, none were from the plaintiff. By the time her application was submitted, on August 30, both applicants who had received offers for the positions had already accepted. (Defs.' Ex. 41-2; Pl's Ex. 135-36.) With respect to the December 2002 opening, there was only one applicant, not Johnson, and that applicant was selected. The plaintiff did not apply, and, therefore, was not considered, for the position. (Defs.' Memo. at 4.)

Because it is a "necessary prerequisite in a failure to promote claim" that the plaintiff actually apply for the promotion, *Dillard v. CTA*, No. 00 C 8028, 2003 WL 22136309, at *4 (N.D. Ill. Sept. 16, 2003), *aff'd* 105 Fed. Appx. 107, 111 (7th Cir. 2004), we need go no further. While courts have occasionally loosened this requirement, they have done so only when discriminatory practices existed to prevent minorities from applying for jobs, not simply when an employee subjectively believed that their application would be futile. *See Loyd v. Phillips*

*Brothers*, 25 F.3d 518, 523 (7th Cir. 1994); *Wilkerson v. Menard, Inc.*, 2009 U.S. Dist. LEXIS 32111, at *23-24 (N.D. Ind. Apr. 15, 2009). Defendant Jung's deposition statement that, from a predictive standpoint, he would not have expected Johnson to apply for the December 2002 position does not come close to sufficiently demonstrating the existence of a discriminatory practice. (Jung Dep. at 207:4-208:14.) Therefore, because Johnson failed to apply for the August and December 2002 promotions, summary judgment is granted with respect to Johnson's claims of discrimination for her failure to be promoted to these two positions.

    B.    *The March 2001 and January 2003 Positions*

With respect to the March 2001 and January 2003 positions—the two other promotional opportunities Johnson has identified—even a *prima facie* showing of discrimination would be insufficient to sustain her claim. Assuming Johnson was able to make a *prima facie* showing, The General Board would need to articulate a legitimate reason for its employment action consistent with a finding that unlawful discrimination was not the cause of that action. *Sublett*, 463 F.3d at 737 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). The burden would then shift back to Johnson to "establish by a preponderance of the evidence that the defendant's proffered reasons are pretextual." *Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995). Because Johnson cannot establish that the General Board's reasons for failing to promote her in March 2001 and January 2003 were a pretext for discrimination, we can decide on these grounds alone that Johnson's claim should not move forward. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (noting that courts may analyze the pretext question first when it is similar to the *prima facie* question of whether the employee was qualified for the position).

Pretext is a "lie, specifically a phony reason for some action." *Sublett*, 463 F.3d at 737. To demonstrate a material issue of fact with respect to pretext, Johnson must show that the explanations given for her 2001 and 2003 non-promotion were not credible. *See id* (citing *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)).

First, with respect to the 2001 Team Leader position, The General Board and defendant Jung claim that they sought a candidate who had healthy interpersonal relations within their team and an ability to work cooperatively with other departments. (Defs.' Stmt. Facts ¶ 42.) Following interviews for this position, the three hiring officials unanimously concluded that John McFall best satisfied these criteria. (*Id.* ¶ 43.) While they believed that plaintiff Johnson would bring a proven set of operational skills to the position, these officials were concerned about her past behavior in the office and her ability to positively engage with others. (*Id.* ¶ 44.) Two prior incidents drove these concerns. In November 2000, Gloria Taylor, an African American Team Leader for a different team, complained to Michael Foreman, Plaintiff's black and Jamaican supervisor, about a workplace encounter. (*Id.* ¶ 32-35.) Taylor alleged that, upon approaching Plaintiff's desk, she and another employee were greeted by Johnson in a defensive and unprofessional manner. Mr. Foreman, Plaintiff's supervisor, viewed the conduct as unnecessarily aggressive. (*Id.*) Additionally, in a separate 2001 incident, another African American employee complained to Foreman about allegedly rude and insensitive behavior from Plaintiff. Foreman met with Johnson about the incident and viewed her behavior at that meeting as confrontational. (*Id.* ¶ 36.) At the time of the 2001 interview, defendant Jung was also concerned about Johnson's interpersonal skills based upon complaints he had received from three of Johnson's superiors regarding three separate incidents. (Jung Dep. at 104:3-107:21.)

9

Lacking direct evidence to rebut The General Board's explanation for her 2001 non-promotion, Johnson asserts that a comparison of her qualifications with those of the candidate selected undermines the credibility of this explanation. While courts have sometimes viewed evidence regarding candidate's qualifications as sufficient to show pretext, they have done so only when the disparity between candidates was extremely substantial. *See Sublett*, 463 F.3d at 738. An employee's personal assessment of her respective qualifications is insufficient. *See Balance v. City of Springfield*, 424 F.3d 614, 620 (7th Cir. 2005). Instead, the evidence must show that the "differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Sublett*, 463 F.3d at 738 (citing *Mlynczak v. Bodman*, 442 F.3d 1050, 1059 (7th Cir. 2006) (citation omitted)). This heavy burden derives from the Seventh Circuit's previously holding that courts should not position themselves as 'super personnel departments' but instead should respect employers' discretion to choose among qualified candidates. *See Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1180 (7th Cir. 2002).

Johnson has alleged that her seniority, prior supervisory experience, advanced degree, and accolades from coworkers sufficiently distinguish her qualifications. (Pl.'s Resp. at 2.7-2.9.) While these attributes may establish that Johnson was a good candidate, they do not show that the rationale advanced by The General Board was pretextual. Courts have often accepted selection rationales involving a candidate's prior dispute with a coworker, *see Sublett*, 463 F.3d at 737, or questionable interpersonal skills, *see Swanson v. Allstate Ins. Co.,* 102 F. Supp. 2d 949, 960, 968-69 (N.D. Ill. 2000), as legitimate and non-discriminatory. Although John McFall may not have been a flawless candidate, The General Board's belief in his professionalism,

knowledge, and leadership skills is not something appropriate for this court to second-guess. (Defs.' Memo. at 3.)

Similarly, Johnson's discrimination claim cannot withstand defendants' motion for summary judgment with respect to her failure to be promoted in 2003. The 2003 hiring officials again identified Johnson's past behavior and lack of strong interpersonal skills as non-discriminatory rationales for their selection of another candidate. (Defs.' Memo. at 6.) By this time, in fact, the grounding for these concerns had grown even stronger. While Johnson denies a number of allegations of disruptive and unprofessional behavior between 2001 and 2003, it is clear that she was informed during that period that concerns about her interpersonal skills were a factor in her inability to attain a promotion. In January 2002, defendant Jung informed Johnson that her upfront and confrontational behavior sometimes made others uncomfortable. (Defs.' Memo. at 3.) Jung also expressed concern to Johnson that the number of positions she was applying for made it seem as if she was not really interested in a particular position, but simply in being promoted. (Defs.' Stmt. Facts ¶ 50.) Given Johnson's inability to identify evidence linking her race or national origin with The General Board's promotion decisions, we accept the reasons articulated by the defendants for their decisions not to promote Johnson in March 2001 and January 2003.

Accordingly, summary judgment is granted with respect to Count I and Count III to the extent that they allege race and national origin discrimination by The General Board. Because defendant Jung is named only in connection with the discrimination claim, summary judgment is also granted with respect to all counts identifying Jung individually.

## II. Retaliation and Promotion

In Count II, Johnson alleges that, in response to complaints of discrimination she filed with her employer and the EEOC, The General Board retaliated against her by denying promotions on the four previously identified dates (March 2001, August 2002, December 2002, and January 2003). Johnson's inability to survive summary judgment with respect to her discrimination claim does not prevent her from prevailing on a claim of retaliation. *See Alexander v. Gerhardt Enters.*, 40 F.3d 187, 195; *see also Burlington Northern & Santa Fe Ry. V. White,* 126 S. Ct. 2405, 2414 (2006) (declaring the scope of conduct prohibited by Title VII's retaliation provision broader than under its discrimination provision). Therefore, although we found above that Johnson's has not presented sufficient evidence to demonstrate that she was discriminated against due to her race or national origin, we find that Johnson has presented sufficient evidence from which a reasonable fact finder could conclude that The General Board's decisions not to promote Johnson were due to retaliation in response to her complaints of discrimination.

When faced with a motion for summary judgment, a plaintiff asserting a claim of retaliation must prove the basic elements of her claim through either the "direct" or "indirect" method. *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). The "direct method", the most straightforward route, requires the plaintiff to present direct evidence that she engaged in protected activity and as a result suffered the adverse employment action of which she complains. *See id.* Even if the plaintiff has no explicit admission of discriminatory animus to submit to the court, the "direct method" may still be satisfied by circumstantial evidence that would allow a finder of fact to infer retaliation. *See*

*Culver v. Gorman & Co.,* 416 F.3d 540, 546 (2005). Because we find that Johnson specifically identifies a number of alleged statements made by the defendants from which a finder of fact could directly infer retaliation, something she did not do with respect to her discrimination claim, we conclude that summary judgment is inappropriate with respect to retaliation.

Johnson alleges that in 1999, the same year she became a permanent employee with The General Board, she made her first informal complaint of discrimination with the organization. (Pl.'s Resp. at 1.1.) Johnson alleges that she again complained to Human Resources about ongoing discrimination in January and March 2001. March 2001 was also the first time Johnson was passed over for a promotional opportunity identified in her claim, losing out to John McFall for the position of Team Leader. Two conversations that allegedly occurred at or around the time of Johnson's unsuccessful bid for this Team Leader position lead us to conclude that summary judgment would be inappropriate with respect to the retaliation claim. The first conversation allegedly occurred between Johnson and Mary Rutherford, a Senior Human Resources Specialist. Johnson claims that, upon informing Rutherford that she was experiencing discrimination, Rutherford discouraged her from opening an investigation into discrimination, saying that discrimination was the most overused word and that an investigation would impact Johnson's ability to win future promotions. (Pl.'s Resp. at 2.15.) The second conversation purportedly took place between Johnson and Jamie Blits, Assistant Manager of Benefits Administration, following the selection of McFall for the Team Leader position. Blits allegedly told Johnson that her tendency to complain about discrimination might have played a role in her inability to attain a promotion. Specifically, Blits purportedly said: "[i]t was brought to my attention that every time you don't get a job, you go to HR and complain." (Pl.'s. Compl. ¶ 4.)

The General Board insists that Johnson made no informal complaints prior to March 2001 and, if she did, she was never threatened or discouraged from issuing these complaints. Because Johnson has sworn to the existence of these events, however, there exists a dispute between the parties over these material facts. Assessing this dispute would require judging the credibility of the witnesses, evaluating the weight of the evidence, and determining the ultimate truth of the matter. Each of these responsibilities, however, is something we leave to the finder of fact. *Wheeler v. Lawson*, 539 F.3d 629 (7th Cir. 2008). At this stage, our role is simply to determine whether there exists a genuine issue of triable fact. *Id.*

Therefore, based upon the specific comments allegedly made to Johnson stating that her complaints about discrimination may have affected her ability to obtain a promotion, we conclude that a reasonable fact finder could find that Johnson's early, informal complaints of discrimination had a detrimental impact on her advancement within The General Board. The finder of fact might determine that Johnson's initial complaints soured her relationship with coworkers and management officials and helped explain her alleged adversarial workplace encounters. The lowered performance reviews that followed Johnson's first discrimination charge with the EEOC in December 2001 might also be deemed a result of retaliation. These lowered reviews do not independently give rise to liability because they are not a materially adverse action. *See Burlington* 548 U.S. at 60 (the prospect of lowered reviews would not dissuade a reasonable person from making a charge of discrimination). However, because these reviews were part of the decision-making calculus with respect to promotional opportunities, they might serve to confirm the detrimental impact of retaliation on Johnson's ability to advance. We similarly conclude that a number of other allegedly adverse actions, including reduced

bonuses and overtime opportunities, may be considered by the finder of fact even if they do not independently give rise to an actionable claim.

Therefore, for the purposes of summary judgment, we accept Johnson's claim that her first protected activity took place prior to the March 2001 promotional decision. *See Burks. v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006) (noting that an informal complaint to supervisors is protected activity). If the fact finder determines from the evidence that these complaints were in fact made, they should also be allowed to determine whether the March 2001 promotion decision was driven by retaliation. We reach a similar conclusion with respect to the January 2003 position. Therefore, summary judgment is denied with respect to the retaliation claims in Counts II and III that involve these two promotion decisions. However, Johnson's failure to apply for the August and December 2002 positions, as discussed in Section I.A *supra*, entitles The General Board to summary judgment with respect to those positions for the same reason it was entitled to summary judgment on Johnson's discrimination claims (*i.e.* because Johnson failed to apply for those promotions in a timely manner).

### III. Johnson's Firing from The General Board

In Counts I, II, and III, Johnson alleges that discrimination and retaliation caused her to be discharged from The General Board in March 2004. At that time, as part of this lawsuit, her former attorneys produced audio tapes containing recorded conversations between Johnson and various employees of The General Board. (Def.'s Memo. at 10-11.) After confirming that Johnson had recorded these conversations without the consent of her fellow employees, the organization concluded that her behavior was in violation of the Illinois Eavesdropping Act and antithetical to the core values of the organization. Johnson was fired shortly thereafter. (*Id.*)

Tape recording coworkers without their consent has repeatedly been deemed legitimate grounds for firing an employee. *See, e.g., Talanda v. KFC Nat'l Mgt. Co.,* 1997 WL 160695, at *6-8 (N.D. Ill. Apr. 2, 1997), *aff'd*, 140 F.3d 1090 (7th Cir. 1998); *Cutts v. McDonald's Corp.,* 281 F. Supp. 2d 931, 934 (W.D. Mich. 2003); *Minton v. Lenox Hill Hosp.,* 160 F. Supp. 2d 687, 694 (S.D.N.Y. 2001). Because Johnson does little to rebut the evidence that The General Board fired her in response to her tape recordings, or to rebut the presumption that this rationale for her firing is legitimate, summary judgment is granted with respect to her termination-related claims in Counts I, II, and III.

## IV.    Sexual Harassment

Finally, in case number 04 C 6158, which has been consolidated with case number 02 C 5221, Johnson alleges that The General Board subjected her to sexual harassment by allowing a Team Leader to show her a sexually explicit video on his computer. Johnson alleges that the purportedly humorous video was offensive because it featured an image of a nude male body. While this incident may have offended Johnson, an actionable sexual harassment claim requires a showing of conduct "sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive working environment." *Pasqua v. Metropolitan Life Ins. Co.,* 101 F.3d 514, 516-17 (7th Cir. 1996). The single image and single incident identified by Johnson does not rise to the level "severe or pervasive" harassment. *See Kaupas v. Village of University Park*, No. 02 C 3674, 2003 WL 22048173 (N.D. Ill. Sept. 2, 2003) (receipt of pornographic email from coworker was not "severe or pervasive"). Therefore, summary judgment is granted with respect to Johnson's claim of sexual harassment.

## V. The Motions to Strike

The defendants and Johnson both filed motions to strike. Defendants' motion seeks to strike a large majority of the 613 statements of fact submitted by the plaintiff. They allege that many of these statements cannot constitute admissible evidence because they lack external authentication. Further, they assert that Johnson cannot rely on her own statements of fact to support her claim. While the defendants are correct that the "usual method of submitting firsthand evidence" consists of filing a separate affidavit to authenticate allegations, *Payette v. Hoenisch*, 284 Fed. Appx. 348, 351 (7th Cir. 2008) (unpublished opinion), the facts asserted by the plaintiff in her complaint and response to the motion for summary judgment under penalty of perjury are converted into admissible affidavits. *See Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996).

Therefore, the question is not whether a plaintiff's self-serving statements are generally admissible as evidence but instead whether the plaintiff has alleged the specific facts and personal knowledge necessary to go beyond the abstractions and conclusions of her complaint. *See Williams v. Seniff*, 342 F.3d 774, 789 (7th Cir. 2003) (citing *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003)); *see also Paz v. Wauconda Healthcare & Rehab. Ctr., LLC,* 464 F.3d 659, 664-65 (7th Cir. 2006). This is not to say that we believe the plaintiff's method of submitting facts was ideal or that we considered all of her submissions admissible. We do conclude, however, that an exercise of discretion, rather than a sweeping dismissal, is our appropriate action when faced with these submissions. As such, the defendants' motion to strike is denied.

Johnson also filed two motions to strike in which she alleges that a specific deposition and a handful of the defendants' submitted facts are hearsay. Because neither the deposition nor

the facts she seeks to strike were relevant to our decision, Johnson's motions are denied.

## CONCLUSION

For the foregoing reasons, the defendants' motions [224, 225] for summary judgment are granted with respect to the race and national origin discrimination claims in Counts I and III, the retaliation allegations based upon the August and December 2002 promotion decisions, all claims against defendant Jung individually, and the consolidated claim of sexual harassment. The motion is denied with respect to Count II insofar as it alleges retaliation in the March 2001 and January 2003 hiring decisions by The General Board. Defendants' motion [343] to strike and both of plaintiff's motions [319, 370] to strike are also denied.

Additionally, we note that considerable leeway has been given to the parties with respect to the briefing on this motion. However, the same leeway will not be given to either side in the future. This case has now been significantly limited to the discreet issue of Ms. Johnson's retaliation allegations based upon the March 2001 and January 2003 hiring decisions by The General Board. Therefore, the scope of any future proceedings before this court shall be limited to that issue.

This case is set for status on October 29, 2009 at 9:00 a.m. to discuss the filing of a pre-trial order and to set a trial date.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: September 28, 2009