# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5221 | **DATE** | July 28, 2010 |
| **CASE TITLE** | Merdelin Johnson vs. General Board of Pension & Health Benefits of the United Methodist Church | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this minute order, Plaintiff's Emergency Motion for Sanctions by Default Judgment [417] is denied.

■[ For further details see text below.]　　　　　　　　　　　　　　　　　　　　　　　　　Docketing to mail notices.

## STATEMENT

　　　This matter is before the court on an Emergency Motion for Sanctions by Default Judgment [417] filed by Plaintiff Merdelin Johnson ("Plaintiff" or "Johnson") against Defendant General Board of Pension & Health Benefits of the United Methodist Church ("Defendant" or the "General Board"). For the following reasons, the motion is denied.

　　　On May 27, 2004, Plaintiff served the General Board with Plaintiff's Third Request for Production of Documents, in which Plaintiff requested, among other things, "[a]ll non-identical copies of the General Board's Employee Manual" and "[a]ll non-identical copies of the General Board's written policies and procedures, including, but not limited to those that apply (and/or applied) to team members in the Benefits Determination Department." (Pl.'s Mot., Ex. A at 3-4). In its response dated June 28, 2007, the General Board indicated that it had "produce responsive documents applicable to Plaintiff in her former Team Member position." (Pl.'s Mot., Ex. C at 1-2). Plaintiff subsequently filed "a number of motions to force Defendant General Board to fully comply with discovery," which were denied. (Pl.'s Mem. at 2).

　　　Plaintiff now brings the instant motion requesting that certain documents be produced, and that Defendant and defense counsel be sanctioned and/or default judgment be entered for Defendant's previous failure to produce these documents.

　　　It is unclear from Plaintiff's filing precisely which documents she is requesting. Two documents that are mentioned include a Corporate Policy Manual and a Manager's Manual (sometimes referred to as "Manager's Resource Manual," "Manager's Reference Guide" and/or "Manager's Resource Guide," hereinafter simply referred to as the "Manager's Manual"). (*See, e.g.*, Pl.'s Reply at 3, 4, 8). The court primarily focuses on these documents.

The General Board contends that "neither the Manager's [ ] Manual, nor the Corporate Policy Manual were in effect during Plaintiff's employment. Specifically, (1) the Manager's [ ] Manual went into effect May 2004; and (2) the Corporate Policy Manual went into effect in 2006." (Def.'s Resp. at 3). According to Plaintiff, "The facts now show that the existence of the Manager's [ ] Manual and the Corporate Manual existed in written and electronic format were fully implemented policies during the time of Plaintiff's employment." (Pl.'s Reply at 8).

Nothing in Plaintiff's submissions shows that these manuals were in existence prior to the termination of her employment. Plaintiff contends, "[A] number of forms . . . were published, distributed or administered by the General Board prior to May 2004, relating to various policies and procedures and are included in the Manager's [Manual] . . . ." (Pl.'s Reply at 4). The mere fact that certain forms may have existed during Plaintiff's employment that were subsequently included in a later-created manual does not mean that an earlier version of that manual must have existed. If Plaintiff believes that certain forms are relevant to her case, the admissibility of those specific forms can be decided as a separate issue. But the existence of these forms does not prove the existence of an entire cohesive Manager's Manual during Plaintiff's period of employment at the General Board. Similarly, Plaintiff's statement that "[i]t is inconceivable that the General Board did not have written policies and procedures during Plaintiff's years of service" (Pl.'s Mot. ¶ 19) is insufficient to prove that such manuals existed during the time she claims they must have existed.

It appears that Plaintiff also makes the argument that even if the policies post-date the end of her employment, they are still relevant. (Pl.'s Reply at 3) ("Further, Plaintiff believed that policies apply after Plaintiff's employment could show a fact finder that the Defendant has changed its course and therefore could be reasonable and proper discovery."). To the extent that the policies were not in force during the time when Plaintiff was employed at the General Board, they are not relevant to Plaintiff's remaining claims.

In addition to the Manager's Manual and the Corporate Policy Manual, Plaintiff also discusses the Employee Handbook, and she points to the fact that various "revised" dates were listed in the Employee Handbook. (Pl.'s Reply at 2). To the extent that Plaintiff is claiming that these dates indicate that earlier versions of the Employee Handbook existed that have not been produced, the court reiterates the fact that simply because certain forms existed at a date prior to the date of a handbook does not indicate that complete versions of the handbook also existed on those dates. If earlier versions of the Employee Handbook did in fact exist, Plaintiff would be entitled to those Employee Handbooks, but there has been no showing that any such versions of the Employee Handbook have been withheld. To the extent that Plaintiff is requesting "draft" copies of the Employee Handbook (Pl's Reply at 2), drafts of policies do not represent actual policies in place, so they are not relevant to Plaintiff's claim.

One other document mentioned by Plaintiff is an Employee Resource Guide, which she says was not produced during discovery. (Pl.'s Reply at 4). It is unclear exactly what this manual is, when it was created, or how it is relevant to Plaintiff's claims. If Plaintiff seeks production of this document and/or seeks to have it admitted at trial, the court can make such determinations at a different time after the parties have addressed this document in more detail.

We next turn to the issue of sanctions. Sanctions "must be proportionate to the circumstances" of a case when a party has shown willfulness, bad faith, or fault. *Collins v. Illinois,* 554 F.3d 693, 696 (7th. Cir. 2009). Rule 37 of the Federal Rules of Civil Procedure governs sanctions for discovery violations. The rule establishes a sequence for parties who violate discovery: "failure to make discovery, next an order compelling discovery, finally sanctions if the failure persists." *Rose v. Franchetti*, 979 F.2d 81, 86 (7th Cir. 1992). In

| STATEMENT |
|---|

enumerating all sanctions within the Court's discretion, the rule states that "rendering a default judgment against the disobedient party" is a possible sanction for disobeying a discovery order. Fed. R. Civ. P. 37(b)(2)(A)(vi). Default judgment is a particularly drastic sanction and requires a showing of "willfulness, bad faith, or fault" on the part of the disobedient party. *Evans v. City of Chicago*, 513 F.3d 735, 743 (7th. Cir. 2008).

There has been no showing that Defendant has withheld any relevant information or disobeyed any court order, let alone that any such action was done in bad faith or with intent to deceive. Plaintiff claims that she "has obtained documents from a number of sources which show that the General Board in this action had misrepresented the truth upon the Court and Plaintiff." (Pl.'s Mot. ¶ 20). As discussed above, the documents submitted and referenced by Plaintiff do not show that any relevant manuals have been withheld, or even that any such manuals necessarily existed. Sanctions against Defendant and counsel - particularly default judgment - are not warranted.

For the foregoing reasons, Plaintiff's Emergency Motion for Sanctions by Default Judgment [417] is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

July 28, 2010